UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TODD LASCOLA, PETITIONER,

v.

UNITED STATES OF AMERICA, RESPONDENT.

CR NO. 00-0133 ML

CA 03-370ML

**MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO**

**FED. R. CIV. PROC., RULE 60(b)**

NOW here comes Todd J. LaScola, petitioner pro se', who moves this Honorable Court, pursuant to Fed. R. Civ. P., Rule 60(b), 60(b)(2), and 60(b)(5), to provide relief from this court's denial of the petitioner's 2255 motion entered September 13, 2004.

## MEMORANDUM OF LAW

### I. Procedural Issues

1. Time

This motion is timely filed as to the matter relating Fed. R. Civ. P., Rule 60(b)(2), which requires relief be sought within one year of the judgment (See Fed. R. Civ. P., Rule 60(b); See also Gonzalez v Crosby, 162 L.Ed 2d 480, 485; 2005), as the United States Court of Appeals denied the petitioner's Certificate of Appealability on September 28, 2005. (Exhibit A)

This motion is timely as to the matter relating Fed. R. Civ. P., Rule 60(b)(5), requiring only that the motion "be made within a reasonable time" (Gonzalez at 485), rather than the stricter one year requirement for Rule(s) 60(b)(1-3), as satisfaction of the restitution order was completed, in its entirety, on January 18, 2006. (Exhibit B, approval of payment to remaining CPI clients)

2. Motion Not A Successive 2255 Motion

This motion is not a successive 2255 motion, and therefore must be heard, as it does not attack the constitutionality of the sentence, but rather procedural error and other issues appropriate to Rule 60(b) motions. (Gonzalez at 493: "This is not the case, however, when a rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some structural defect in the integrity of the habeas proceedings.)

**II. Rule (60)(b)(5) Issue**

Rule 60(b)(5) allows for relief when "the judgment has been satisfied[.]" (Fed. R. Civ. P., Rule 60(b)(5))

In this case, there can be no contention that all of the "victims" of the restitution order (Exhibit C) have been made whole at this time.

The majority of the victims were satisfied by distributions made by CPA's trustee, Edward Bertozzi, Jr., as he clearly states in his "Final Report and Account" ("CPA Report") (Exhibit D), "customer claims were satisfied in full in the amount of $6,834,811.89." (Exhibit D, No. 21)

Further, the largest "victim" in the restitution order, SIPC, has also been fully satisfied. All but $4,486.35 had been satisfied prior to the CPA Report (Exhibit D, No. 31), and the balance in the final distribution. (Exhibit E, No. 4)

The remaining victims, those not classified as CPA customers, but rather CPI customers, were indicated in the CPA Report as "CPI claims". (Exhibit D, Pg. 20) These remaining victims have been satisfied by the distributions made through CPI's bankruptcy proceedings, as indicated in the "Receiver's First and Final Report" ("CPI Report") (Exhibit B) and "Schedule C" of said report. (Exhibit F)

While it is clear from the aforementioned documentation that the restitution order has been satisfied, it is laid to rest by the distribution from CPI to the petitioner's personal bankruptcy trustee. "After conferring with counsel to the SEC who indicated that the SEC would have no objection, the Receiver proposes that such excess funds be paid to LaScola's Chapter 7 Trustee, Ralph McCullough, Esq., Suite 1800, 1201 Main Street, Columbia, SC 29202, on account of LaScola's equity interest in CPI, so that such funds can be distributed to LaScola's creditors." (Exhibit B, No. 20) Such a distribution could never occur if any "victim" remained unsatisfied.[1]

---

1. Note that this same issue is pending before this court, in what the clerk has classified as a motion to amend terms of supervised release. Because the judgment indicates **immediate payment**, compounded by the BOP's ability to collect funds during his incarceration, this issue is appropriate for immediate consideration.

## III. Rule 60(b)(2)

New evidence, in the form of the aforementioned CPA Report, clearly shows the value of the RBG notes, as there was in excess of $7.3 million derived from such. (Exhibit D, No. 24; "resulting in the collection of approximately $5.3 million from the Monarch Lakes real estate project and $2.074 million from the Cutter Sound real estate project")

This new evidence, while significant, definitive, and material, is still subject to the Mitchell standard in order to obtain relief under Rule 60(b)(2). (Gonzalez-Pina v Guilermo Rodreguez, 407 F.3d 425, 433)

### A. Mitchell Standard

The prevailing law in the First Circuit requires the use of the Mitchell Standard to determine determine if "newly discovered" evidence requires relief be granted.

For a motion under Rule 60(b)(2) to succeed, "requires proof of the following elements:

(1) The evidence has been discovered since [the judgment];

(2) The evidence could not by due diligence been earlier discovered by the movant;

(3) The evidence is not merely cumulative or impeaching; and

(4) The evidence is of such a nature that it would probably change the result[.]"

(US v Mitchell, 141 F.3d 8)

The petitioner meets the Mitchell Standard as analyzed moving forward.

A.1 New Evidence

The burden of showing that the CPA Report was discovered after the denial of the 2255 Motion is easily met. The CPA Report was issued in November, 2004 (Exhibit D), two months after the denial of the 2255 Motion.

Further, as to whether or not the CPA Report qualifies as new evidence of the RBG note value, the reasoning in Kittenbach is convincing:
"Because the [RBG Note and its value] documented by the [CPA Report] predated the judgment, the [CPA Report] is considered newly discovered evidence." (Kettenbach v. Demoulas, 901 F.Supp. 486, 49; Mass, 1995)(citations omitted)

Furthermore, in this case, just as in Kettenbach, even though the new evidence (proceeds received from the RBG notes) occurred after the sentencing, the RBG Notes, and the underlying real estate, existed at the time of sentencing. (Kettenbach at 494)(See also Rivera v M/T Fossarina, 840 F.2d 152; 1st Cir. 1998) Therefore, it existed prior to the petitioner's 2255 Motion.

A.2 Prior Due Diligence

The burden of this Mitchell prong is also easily met. The same trustee who issued the CPA Report, Edward Bertozzi, Jr., was on record as stating the RBG Notes "have and will be losers." (Exhibit G, Pg. 2) This issue alone meets the burden of this prong. (See Kettenbach at 492: "There is no reason to

believe that that any deposition of [Bertozzi] would have produced any information apart from the affidavit.")

Even when later prompted through correspondence by the petitioner, he was merely informed by Bertozzi that the RBG Notes did have value but was provided no details. This basic information prompted the petitioner's original 2255 Motion as to loss amount.

Therefore, it would be unreasonable to expect that any reasonable avenue existed to secure the information prior.

A.3 Cumulative or Impeaching

This showing is also made with little difficulty. The government's position, supported by the trustee, made it clear that the belief was that the RBG Notes were relatively worthless, though no actual evidence, save the trustee's opinion, was offered. Prior to this new evidence, no evidence of the RBG Note value was available or offered to this court. Therefore, it could be neither cumulative nor impeaching.

A.4 Change in Result

This final, and most subjective prong, applies in this case as detailed following.

A.4(A) Discussion of Initial Results

It is clear that prior to this new evidence, this court understandably believed that the RBG notes were worthless, or close to such.

This is shown in the court's determination that this case was more related to a theft case than a fraud case. (See Exhibit H, Sentencing Transcript Pg. 15. ln. 11-14; See also PSR Addendum Pg. 1: stating that §2B1.1, the theft guideline, is applicable)(See also US v Alegria, 192 F.3d 179; 1st Cir. 1999)

Even in the petitioner's original strategy in mitigating loss, though erroneously based on the 1998 guidelines - not 2000, was based on the collateral value of the underlying real estate, versus the actual value of the securities, the RBG Notes themselves. (Exhibit I, Pg. 9) Clearly a significantly different strategy than one of "net loss", the exchange of something of value, which would have been available only if this evidence was available at the time.

While the petitioner, in his 2255 Motion, takes the approach of "net loss" (rather than collateral offset on loan fraud) (Exhibit J), the court still interprets such as analogous to loan fraud when denying the 2255 Motion. (Exhibit K, Pg. 7) An understandable approach with no evidence of formal value of the security.

A.4(b) Effect of New Evidence

With the addition of the newly discovered evidence, the governing law becomes much less ambiguitous, and in such demonstrates a much different outcome to the petitioner's 2255 Motion:

A.4(b)(2) Governing Law

As this court previously stated, Application Note 8 of U.S.S.G. §2F1.1 is the governing guideline in such cases. (Exhibit K, Pg. 8)

Application Note 8, subsection (a) states the proper way to calculate loss in cases of fraud relating to securites such as the RBG Notes: "Where, for example, a defendant fraudulently represents that [a security] is worth $40,000 and the [security] is worth only $10,000, the loss is the amount by which the stock was overvalued (i.e., $30,000)." (See also, US v Cacho-Bonilla, 2005 U.S. App. Lexis 6519:"The fraud guidelines keys the offense level to the net loss inflicted"; applying the 2000 guidelines)

There has never been any suggestion, much less accusation, that the petitioner ever tried to retain, for himself, either the funds or the RBG Notes. Therefore, the exchange of something of value, though clearly not the quality "something" that the victims would have wanted, requires the net loss approach.

The application of net loss when something of value is exchanged is also mandated by the First Circuit case law. "If a fraud is a naked taking of property, the net and gross loss are the same since the victim got nothing of value in return for the property given up. However, if the fraud consists of an unequal exchange... the loss of taking consists only of the difference in value between what was given and what was obtained. In any event, it is a net value that must be used to measure loss. Any other approach ignores reality." (US v Alegria, 192 F.3d 179, citing US v Smith, 951 F2d 1164, 1167; 10th Cir. 1991)

As the above case law shows, the court, without proof of value of the securities, very well may, and in this case did, use the "value of what is taken", when no value seems to exist. However, the same case law, when there is documented value, requires net loss.

Therefore, there can be no question as to a different result, considering the new evidence, in the petitioner's 2255 Motion, requiring success of the petitioner's Rule 60(b) motion.

## CONCLUSION

The petitioner has made a showing of satisfaction as to the restitution order and is entitled to discharge of said order.

Further, the petitioner has shown that the new evidence, the CPA Report, meets the Mitchell Standard and prays that this Honorable Court grants relief from the 2255 Motion judgment and reopen such for further consideration on the new evidence issue as it relates to loss amount.

Respectfully submitted this 21st day of March, 2006.

Todd J. LaScola
#04952-070
FCC - Low
P.O. Box 1031
Coleman, FL 33521

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| TODD LASCOLA,<br>PETITIONER,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>RESPONDENT. | )<br>)<br>)<br>)<br>)<br>)<br>) |

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2006, I served via first class mail, postage prepaid, a copy of the within filing:

Donald Lockhart, Esq.
Asst. U.S. Attorney
Fleet Center
50 Kennedy Plaza
8th Floor
Providence, RI 02903

[signature]
Todd J. LaScola

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RECEIVED
MAR 21 2006
Property of U.S. District Court
District of Rhode Island

TODD LASCOLA, )
PETITIONER, )
)
v. ) CR NO. 00-0133-ML
)
UNITED STATES OF AMERICA, )
RESPONDENT. )

CA 03-370 ML

TABLE OF EXHIBITS

A. Denial of C.O.A.

B. CPI First and Final Report

C. Judgment and Commitment Restitution Order

D. CPA Final Report and Account

E. Order Approving CPA Final Distribution

F. CPI First and Final Report - Schedule C

G. Report to U.S. Probation

H. Sentencing Transcript, Pg. 15

I. Objection to PSR

J. 2255 Motion

K. Denial of 2255 Motion